**DOCKET NO. 22-14011-HH**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

JOHN MEISEL,
*Petitioner,*

v.

THE SECURITIES AND
EXCHANGE COMMISSION,
*Respondent.*

ON PETITION FOR REVIEW OF AN ORDER OF THE
SECURITIES AND EXCHANGE COMMISSION

**INITIAL BRIEF OF PETITIONER**

LUKE LIROT, ESQ.
Luke Charles Lirot, P.A.
2240 Belleair Rd., Suite 190
Clearwater, FL 33764
Phone: (727) 536-2100
Facsimile: (727) 536-2110
Primary E-mail: Luke2@lirotlaw.com
*Counsel for Petitioner*

Exhibit _A_

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Petitioner, John Meisel, submits the following persons with an interest in the outcome of this appeal:

1. Barbero, Megan, General Counsel for the Commission

2. Berkovitz, Dan M., General Counsel for the Commission

3. Carr, Jonathan, Assistant Director, Office of the Whistleblower

4. Conley, Michael A., Solicitor for the Commission

5. Countryman, Vanessa, Secretary to the Commission

6. Correll, Frank E., Attorney for the Office of the Whistleblower

7. Crenshaw, Caroline A., Commissioner

8. Gensler, Gary, Chair for the Commission

9. Kelly, Nicole C., Chief, Office of the Whistleblower

10. Lirot, Luke, Counsel for Petitioner

11. Lizarraga, Jaime, Commissioner

12. Meisel, John, Petitioner

13. Norberg, Jane, Former Chief, Office of the Whistleblower

14. Peirce, Hester M., Commissioner

15. Parise, Emily True, Counsel for Respondent

16. Silverman, Stephen, Counsel for Respondent

17. United States Security and Exchange Commission, Respondent

18. Uyeda, Mark T., Commissioner

19. White, Christopher, Declarant in SEC Order

# STATEMENT REGARDING ORAL ARGUMENT

This Court would benefit from oral argument. In this case, the Securities and Exchange Commission ("Commission" or "SEC") improperly denied a claim for an award by a whistleblower after he had reported original information, independent knowledge, and independent analysis about *SEC v. Abdallah*, No. 1:14 CV 1155 (N.D. Ohio), and related actions, and the Commission relied on the whistleblower's original information to obtain judgments of over $18 million, including restitution to the harmed investors. The whistleblower was entitled to an award as required by the Dodd-Frank Act.

This is the first case in which this Court will be able to review *de novo* the sufficiency of an otherwise unilateral Declaration in an SEC Order and determine whether the Commission's denial of an award violated the Administrative Procedure Act.

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS ii

STATEMENT REGARDING ORAL ARGUMENT iv

TABLE OF CONTENTS v

TABLE OF CITATIONS, STATUTES AND RULES vii

JURISDICTIONAL STATEMENT 1

STATEMENT OF THE ISSUES 2

STATEMENT OF THE CASE 2

SUMMARY OF THE ARGUMENT 7

STANDARD OF REVIEW 8

ARGUMENT 9

MEISEL IS ENTITLED TO A DFA WHISTLEBLOWER
AWARD UNDER RULE 21F-4(c)(1) and 21F-4(c)(2). 9

A. A Discussion of *United States Securities and Exchange
Commission v. Thomas Abdallah, et al*. Receiver 11

B.     A Discussion of *Ehrman, Receiver for the Assets of the
Receivership Defendants and Relief Defendants in 1:14cv1155 v.
Quest Innovation LLC, et al.* 14

C.     A Discussion of *United States v. Hixson*, No. 16-cr-00128
(N.D. Ohio) 15

D.     A Discussion of "Related Cases" 17

E.    The Final Order by the Commission is Unsupported by Substantial Evidence    18

F.    A Discussion of Christopher White's Initial Declaration    18

G.    A Discussion of Christopher White's Supplemental Declaration    22

H.    A Discussion of 'Related Action'    24

I.    MEISEL IS ENTITLED TO A DFA WHISTLEBLOWER AWARD BECAUSE HE PROVIDED SPECIFIC, CREDIBLE, AND TIMELY INFORMATION TO CAUSE THE COMMISSION TO EXPAND THE INVESTIGATION WHICH LED OR SIGNIFICANTLY CONTRIBUTED TO A SUCCESSFUL ACTION – 17 C.F.R. § 240.21F-4(c)(1)-(2).    27

CONCLUSION    29

CERTIFICATE OF COMPLIANCE    30

CERTIFICATE OF SERVICE    31

# TABLE OF CITATIONS, STATUTES, AND RULES

| Citation, Statute, or Rule | Page(s) |
|---|---|
| 5 U.S.C. § 706, Administrative Procedure Act | iv,1,6,8,29 |
| 15 U.S.C. § 78u-6 | 1,2,8,24,25,28,29 |
| 17 CFR § 240.21F-4 ("Rule 21F-4") | 9,10,13,14,17,19,23,26-29 |
| *Cerny and Buxbaum v. SEC*, Summary Order at 3, 16-934-ag (2d Cir. Sept. 7, 2017). | 8,18 |
| Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) | iv,1,2,5-7 |
| *Doe v. SEC*, 729 Fed. Appx. 1, 4 (D.C. Cir. 2018) | 8,12,18 |
| *FTC v. On Point Glob. LLC,* Civil Action No. 19-25046-Civ, 2020 U.S. Dist. LEXIS 180255 (S.D. Fla. Sep. 30, 2020). | 13 |
| *Hong v. United States SEC*, 41 F.4th 83, 99 (2d Cir. 2022) | 17,24-26 |
| *In re Jeremy S. Hixson*, SEC Admin. Proc. File No. 3-17880 | 10,17,19,27 |

*James Ehrman, Receiver, v. Quest Innovations, et. al,* 16-cv-02904 (N.D. Ohio)      10,14

*Kilgour v. United States SEC*, 942 F.3d 113, 116 (2d Cir. 2019)      12

*United States Security and Exchange Commission v. Thomas Abdallah*, Case No. 1:14-cv-1155, United States District Court for the Northern District of Ohio.      3,4,7,9,11,13-16,18-21,23,24,26,27

*United States v. Hixson*, 16-cr-128 (N.D. Ohio)      14-16,26,27,

# JURISDICTIONAL STATEMENT

The ruling under review is the Securities and Exchange Commission's *Order Determining Whistleblower Award Claim*, denying Petitioner's claim for a whistleblower award under the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank" or "DFA"). *See* Appendix Exhibit 1, Securities Exchange Act of 1934 Release No. 96227, Whistleblower Award Proceeding File No. 2023-09, Order Determining Whistleblower Award Claim (November 4, 2022). The Commission had original subject matter jurisdiction over Petitioner's request for an award under the whistleblower provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA" or Dodd-Frank Act") pursuant to Section 21F of the Securities Exchange Act of 1934. 15 U.S.C. § 78u-6(b). This Court has subject matter jurisdiction over this appeal from the Commission's denial of Petitioner's application for a whistleblower award pursuant to 15 U.S.C. § 78u-6(f), which provides for appeal of an award determination filed within 30 days of the determination. Petitioner John Meisel resides in the State of Florida, whose jurisdiction falls under the United States Court of Appeals for the Eleventh Circuit. 15 U.S.C. § 78y(a)(1). This appeal is subject to review in accordance with Section 706 of the Administrative Procedures Act ("APA"). 5 U.S.C. § 706.

Petitioner filed a timely Petition for Review of the Commission's November 4, 2022, Final Order in this Court on December 2, 2022.

## STATEMENT OF THE ISSUES

Did the Commission reach an incorrect decision and improperly deny Meisel an appropriate award under the Dodd-Frank Act, when it was shown that Meisel provided sufficiently specific, credible, and timely information, "original information," which was (1) derived from the whistleblower's "independent knowledge or analysis;" (2) "not known to the Commission from any other source, unless the whistleblower is the original source of the informational; and (3) not exclusively derived from an allegation made in a judicial or administrative hearing, fully satisfying 15 U.S.C. § 78u-6(a), which resulted in a successful enforcement of an administrative or judicial action?

## STATEMENT OF THE CASE

This is an appeal from the SEC's November 4, 2022, Final Order Determining Whistleblower Award Claim denying John Meisel's ("Meisel") application for an award under the Dodd-Frank Act (hereinafter "Final Order"). Appendix Exhibit 1. The background of this case, and why this Case demands attention form this Court, begins with the fact that Meisel caused the Commission to inquire concerning different conduct than they were investigating as part of their current examination or investigation, that led to the successful enforcement by the SEC.

Meisel at this time owned a rental property which he rented to a man named Jeremy Hixson. This rental arrangement was a "lease-purchase". At this point in time, Meisel became aware of multiple, expensive pre-purchase improvements to this rental property by Hixson. Hixson was making payments to Meisel from checks drawn on an account held by Quest Innovations, LLC, signed by a woman named Amy Rollyson, ("Rollyson"), Mr. Hixson's girlfriend at the time. Curious as to what Quest Innovations, LLC ("Quest") actually was, Hixson confided to Meisel that Quest was set up under Rollyson's name to hide income from Hixson's then-wife, with whom he was involved in a divorce.

Around this time, Meisel became aware of a news story in the Akron Beacon-Journal[1] about a massive and ongoing purported "Ponzi scheme" at issue in the case of *United States Security and Exchange Commission v. Thomas Abdallah,* Case No. 1:14-cv-1155, United States District Court for the Northern District of Ohio. (the "*Abdallah* Case"). Meisel, having read the article about the Ponzi scheme and, speaking with a former neighbor regarding the recent listing of a lake house by a mutually known real estate agent that was owned by Jeffrey Gainer ("Gainer"), an individual named prominently in the Akron Beacon Journal article. The Akron Beacon Journal article, specifically referenced "a fake oil and fuel-trading business,"

---

[1] "*Akron-area Ponzi scheme took in nearly $21 million from 47 people, SEC lawsuit says,*" Akron Beacon Journal, June 20, 2014. Appendix Exhibit 2.

3

which made Meisel suspicious that Hixson might be involved in the Ponzi scheme based upon a prior conversation that Meisel and Hixson had in which Hixson told Meisel that he was making over $20,000 a month in "oil and gas," and the fact that Hixson played in a golf league with the real estate agent that recently listed Jeffrey Gainer's lake house.

Based upon the suspicions that Meisel had, he then accessed the PACER court filing system, and, through his own investigative efforts, identified on the "Gainer Ledger" numerous entries for a "quest" and a single entry "hix gets half." The "Gainer Ledger" did not describe the actual entity "Quest Innovations, LLC," and referenced inconspicuously "quest," often just a lower case entry in a large number of more specific entries with names and much more descriptive information.

With the knowledge of knowing what the actual "quest" was, and that Hixson had his girlfriend Rollyson register the entity Quest Innovations, LLC to hide monies from Hixson's wife that he was in the process of divorcing, and knowledge of a possible relationship between Hixson and Gainer from the mutual relationship with the real estate agent, coupled with the prior conversation with Hixson in which Hixson admitted getting over $20,000 a month from "oil and gas," Meisel proactively contacted the Commission and had a telephone conversation with Mr. Timothy Leiman (Leiman), the lead attorney listed in the *Abdallah* case, and relayed this critical and otherwise unattainable information to Leiman. It was based on this

information that the Commission relied on the whistleblower's original information to inquire into different conduct that led to the successful enforcement by the Commission.

The conversation with Leiman included the original information that Quest Innovations was a registered Limited Liability Corporation in the State of Ohio, registered by Rollyson, as stated above, the girlfriend of Hixson. and that Meisel suspected Hixson's involvement in KGTA, (an entity identified in the Akron Beacon Journal article, based on "<u>K</u>enneth <u>G</u>rant <u>T</u>homas <u>A</u>bdallah"). This "Gainer ledger" reflected various "commissions" related to the "Ponzi scheme," but Meisel helped fill in critical missing information that would have been overlooked by the Commission.

In totality, the Commission secured judgments of over $18 million against numerous defendants involved in the Ponzi scheme, including restitution to the harmed investors. Meisel, as the "whistleblower," was entitled to an award as required by the Dodd-Frank Act, but the Commission failed in its requirement to recognize Meisel's information as "original" information. It was only Meisel's information that led the Commission to inquire into different conduct that led to the successful enforcement by the Commission. Additionally, the Commission failed to correctly recognize the "related case," as defined by the Commission, as a basis to properly award Meisel, as the "whistleblower," to the award he was entitled to under

the Dodd-Frank Act. In doing the analysis of determining the denial of an award, the Claims Review Staff (CRS) relied upon declarations of Christopher White (White), an attorney for the SEC. The declarations are fraught with inconsistencies and misleading statements in an effort to support White's narrative and not the actual facts of the case clearly supporting Meisel's award.

This is the first case in which this Court will be able to review *de novo* the sufficiency of an otherwise unilateral Declaration, immune from cross-examination, in an SEC Order and determine whether the Commission's denial of an award violated the Administrative Procedure Act. The fraud at issue and Meisel's actions initiated an additional proceeding, as well as expanded pre-existing proceedings that arose out the same nucleus of operative facts, that led to a successful enforcement action by the SEC in 2014. See Appendix Exhibit 3 (Securities and Exchange Commission, Release No. 23097, Notice of Covered Action File No. 2017-150 (September 30, 2014), available at https://www.sec.gov/whistleblower/claim-award (hereinafter "Notice of Covered Action No. 2017-150")). Meisel met all the qualifications to be compensated as a whistleblower under the plain language of Dodd-Frank. However, the Commission erroneously denied the claim by relying upon the application of definitions of "original information" that was significantly influenced by the less than credible declarations of Christopher White ("White") and

the narrow application of "related cases" to satisfy the Commission's erroneous narrative. The specifics to support the relief requested herein are set forth below.

## SUMMARY OF THE ARGUMENT

On July 7, 2014, Meisel contacted SEC Attorney Timothy Leiman, Esq. and informed him of his original information. *See* Appendix Exhibit 4, ¶ 4, White October 3, 2022, Declaration. *See also* Appendix Exhibit 5, Exhibit A to Form TCR.

Meisel submitted a disclosure to the SEC on August 25, 2014, using the Tip, Complaint, or Referral Form. Appendix Exhibit 6. Meisel's Tip, Complaint or Referral Form incorporates by reference all the original information voluntarily provided by Meisel since his discovery of the fraud.

After the SEC published its Notice of Covered Action in the *SEC v. Thomas Abdallah, et al.* proceeding, Meisel timely filed his Award Claim on January 22, 2018. Appendix Exhibit 6. In this application, Meisel demonstrated that he met the Dodd-Frank's statutory requirements for an award.

On August 4, 2020, the Commission issued a Preliminary Determination recommending denial of Meisel's application. Appendix Exhibit 7. On September 30, 2020, Meisel submitted a timely Response to the Preliminary Determination and Request for Reconsideration. Appendix Exhibit 8. Nonetheless, on November 4, 2022, the SEC issued its Final Order denying Meisel's claim with an incorporated Supplemental Declaration of Christopher White. Appendix Exhibit 1.

Based on erroneous Declarations, the Commission reached an incorrect decision. Meisel provided sufficiently specific, credible, and timely information, "original information," which was (1) derived from the whistleblower's "independent knowledge or analysis;" (2) "not known to the Commission from any other source, unless the whistleblower is the original source of the informational; and (3) not exclusively derived from an allegation made in a judicial or administrative hearing, fully satisfying 15 U.S.C. § 78u-6(a)(3). Meisel should have received the benefits of his contributions.

## STANDARD OF REVIEW

This appeal is subject to review in accordance with Section 706 of the Administrative Procedures Act ("APA"). 5 U.S.C. § 706. In the Second Circuit, the Commission's determination can be set aside if it is "unsupported by substantial evidence". *Cerny and Buxbaum v. SEC*, Summary Order at 3, 16-934-ag (2d Cir. Sept. 7, 2017). See also, *Doe v. SEC*, 729 Fed. Appx. 1, 4 (D.C. Cir. 2018) (the D.C. Circuit found "substantial evidence supporting the Commission's decision" to deny a whistleblower award.)

# ARGUMENT

## MEISEL IS ENTITLED TO A DFA WHISTLEBLOWER AWARD UNDER RULE 21F-4(c)(1) and 21F-4(c)(2).

On July 7, 2014[2], Petitioner John Meisel ("Meisel") read about the Commission's enforcement proceeding in *SEC v. Abdallah, et al.*, 14-cv-01155 (N.D. Ohio)[3]. In familiarity with individuals named Jerry Hixson, his then-girlfriend Amy Rollyson, and their Limited Liability Company called Quest Innovation LLC ("Quest"), Meisel recognized the references in the ledger to "hix gets half" and, in several instance, the word "quest." Meisel then reached out *via* phone and e-mail to SEC Attorney Timothy Leiman, Esq.—Mr. Leiman was one of the SEC's attorneys listed on the *Abdallah* complaint. In contacting Mr. Leiman, Meisel provided him with sufficiently specific, credible, and timely information about Mr. Hixson, his securities background with a number of then-Defendants—despite not being a defendant himself—and Hixson's **hidden** association and control over Quest, using Amy Rollyson as proxy. *See* Appendix Exhibit 5, Exhibit A to Form TCR. This pattern of creating LLCs under a partner's name was one that held true with Defendants Jeffrey Gainer and Jerry Cicolani. This specific, credible, and timely

---

[2] Appendix Exhibit 4, ¶ 4, Supplemental Declaration of Christopher White
[3] Appendix Exhibit 2.

information was memorialized in Meisel's August 25, 2014, TCR filing with the U.S. Securities and Exchange Commission.

On July 22, 2014, Meisel received an e-mail from SEC Attorney Leiman informing Meisel that he cannot "provide any details on the progress of our investigation that have **not yet been made part of the public record** (including any facts that we may have uncovered from **following up on the information that you provided**)." Appendix Exhibit 5, Exhibit B to Form TCR (Emphasis added.)

> You **gave the Commission original information that was sufficiently specific, credible, and timely to cause the staff to** commence an examination, open an investigation, reopen an investigation that the Commission had closed, or to **inquire concerning different conduct as part of a current examination or investigation, and the Commission brought a successful judicial or administrative action based in whole or in part on conduct that was the subject of your original information;**

17 C.F.R. §240.21F-4(c)(1). (Emphasis added.)

In August of 2014, there is an interview with questions about Quest. On August 4, 2014, the SEC moves for receiver. On December 10, 2014, charges were filed against Hixson in the Northern District of Ohio, Case No. 14-mj-03170. This would later transform into a parallel proceeding between the Department of Justice ("DOJ"), 16-cr-00128 (N.D. Ohio); *In re Jeremy S. Hixson*, SEC Admin. Proc. File No. 3-17880; and the SEC's Receiver, Mr. James Ehrman, *James Ehrman, Receiver, v. Quest Innovations, et. al*, N.D. Ohio, Case No. 16-cv-02904. *See also* Appendix

Exhibit 9, 14-cv-01155 (N.D. Ohio) *Motion to Compromise Claims Notice of Deadline to File Objections* (Doc. 309).

## A. A Discussion of *United States Securities and Exchange Commission v. Thomas Abdallah, et al. Receiver*

On August 8, 2014, SEC Attorney Robin Andrews, Esq., filed Document Number 72 in *United States Securities and Exchange Commission v. Thomas Abdallah, et al.*, N.D. Ohio, Case No. 1:14-cv-1155. ('Motion of the United States Securities and Exchange Commission for the Appointment of a Receiver'). Appendix Exhibit 10. With the Motion for the Appointment, Defendants filed Oppositions to the Motion for Order Appointing Receiver, to which SEC Attorney Christopher White, Esq. filed *SEC'S Combined Response to Objections of the Gainers, Cicolani, and Hood to Proposed Order Appointing Receiver*. Appendix Exhibit 11. Therein, SEC Attorney White highlights the SEC's plans to be heavily involved in the Receiver's process. So much so, in fact, the Receiver would not have to locate assets or perform their own analyses, in the name of "avoiding duplication of efforts." *Id.* at 4. Further, and in accordance with the Proposed Order also drafted by the SEC, the Receiver is authorized to Investigate and Prosecute claims, but would only be able to recover and/or conserve Receivership Property in consultation with SEC Counsel. Appendix Exhibit 10 at ¶ 42. *See also,* Appendix Exhibit 12 at ¶

42. Additionally, the Receiver is required to submit to the SEC's counsel routine billing. *Id.* at ¶ 60.

> Claimant's argument that Claimant contributed to the Covered Action through providing assistance to the Receiver also lacks merit. While Claimant describes hardships experienced while assisting the Receiver and argues that the Commission staff oversimplified the Receiver's actions and diminished the amount of Claimant's assistance to the Receiver, Claimant does not qualify for an award on these grounds. Claimant's argument rests on the provision of information to the Receiver, not the Commission … But a receiver does not work for the Commission or represent the interests of the Commission.

Securities Exchange Act of 1934 Release No. 96227, Whistleblower Award Proceeding File No. 2023-09, Order Determining Whistleblower Award Claim (November 4, 2022) (footnotes omitted).

In spite of all this, the Commission believes that the Receiver is in no way related to the SEC and is merely an officer of the court designated by the court, with the SEC having no influence over this purportedly independent Receiver. In reality, the guise of being an officer of the court does not immunize the Receiver from acting as a *de facto* agent of the SEC—having to file regular billing reports, rely solely on the SEC for constant approvals, and involve the SEC in the event of resignation— <u>nor does it prohibit the Receiver from acting as a representative and conduit of information by which the SEC benefits.</u> See *Kilgour v. United States SEC*, 942 F.3d 113, 116 (2d Cir. 2019) ("The SEC considers an applicant to be an 'original source' of information that the SEC has obtained from another source if 'the other source

obtained the information from [the applicant or her] representative.' *Id.* § 240.21F-4(b)(5).") Moreover, when "the SEC will assist the receiver in locating assets", Meisel's assistance of the receiver in locating assets is assisting the SEC in fulfilment of their obligations. *See* Appendix Exhibit 13 at 4; *Abdallah,* Appendix Exhibits 10 and 12 at ¶ 56 ("[T]he Receiver shall provide the Commission with any documentation … to further the Commission's mission."). Contrary to the belief of the Commission, Claimant Meisel need not to have provided information <u>directly</u> to the Commission, once the Commission passed its authority and responsibilities to a Receiver of their choice. *See FTC v. On Point Glob. LLC,* Civil Action No. 19-25046-Civ, 2020 U.S. Dist. LEXIS 180255 (S.D. Fla. Sep. 30, 2020). *See also,* Appendix Exhibits 10 and 12 at ¶ 42, 43, 51, and 56.

Meisel's assistance of the SEC-selected Receiver, with "his own personal analysis" (*See* Appendix Exhibit 14, *E-mail Communication Between Receiver James W. Ehrman and John Meisel dated September 25, 2020 in re 1:14-cv-1155-SO.*) was "new information" and "meaningful and useful" to "investigate, identify, locate **and recover assets from the receivership defendants for the benefit of the victims of the KGTA Ponzi Scheme.**" *Id.* Further, "[t]his information pertained **not only to** receivership defendant Jeremy **Hixson**, Amy **Rollyson**-Hixson, **and Quest** Innovations LLC, **but also to** receivership defendants **Jeffrey Gainer, Jerry Cicolani, and Kelly Hood.**"

Undoubtedly, Meisel fulfilled the requirements for entitlement under 17 C.F.R. 240.21F-4(b)(3) and 17 C.F.R. 240.21F-4(c)(2). The e-mail from Receiver James W. Ehrman to John Meisel unequivocally supports that Meisel gave the Commission original information about conduct that was already under examination or investigation by the Commission and Meisel's submission significantly contributed to the success of the *SEC v. Abdallah* recovery action, leading to a recovery of over $18 million in *SEC v. Abdallah* and all related cases, including restitution—of which Meisel is reasonably entitled to for his meaningful, and long-lasting contributions.

**B.** **A Discussion of *Ehrman, Receiver for the Assets of the Receivership Defendants and Relief Defendants in 1:14cv1155 v. Quest Innovation LLC, et al.***

Upon becoming Receiver in *SEC v. Abdallah, et al.*, Receiver Ehrman filed a demand for under $1,000,000 in *Ehrman v. Quest Innovation LLC, et al.*, N.D. Ohio, Case No.: 5:16-cv-02904-TMP in December of 2016, whilst a parallel DOJ proceeding was commenced against future add-on Defendant, Jeremy Hixson in *United States v. Hixson*, No. 16-cr-00128 (N.D. Ohio). From the get-go, Receiver Ehrman indicated *Ehrman v. Quest Innovation LLC, et al.* was related to *SEC v. Abdallah, et al.*, No. 1:14-cv-01155-SO (N.D. Ohio). *See* Appendix Exhibit 15. *See*

*also*, Appendix Exhibit 16 (reassignment to Chief Judge Solomon Oliver, Jr.—then-presiding also over *SEC v. Abdallah, et al.*)

## C. A Discussion of *United States v. Hixson*, No. 16-cr-00128 (N.D. Ohio)

While Commission's Declarant, the sole factual basis used for denial of Meisel's claim, insists that the SEC was already aware of Mr. Hixson and the information Meisel provided did not aid in the prevailing of an action, the facts speak for themselves; specifically, in *U.S. v. Hixson*, Doc. 7, *Information*, Appendix Exhibit 17 states:

### COUNT 2
### (False Statement – 18 United States Code, Section 1001)

23. In or around February 2014, the United States Securities and Exchange Commission, Division of Enforcement ("SEC") began investigating what it believed to be a Ponzi fraud scheme involving a company called KGTA Petroleum, LTD. ("KGTA") and its principles.
…
26. On or about August 7, 2014, in the Northern District of Ohio, Eastern Division, HIXSON knowingly and willfully made a materially, false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the United States, namely the SEC, to wit: Defendant stated during a telephone interview conducted by the SEC that A.R., his girlfriend at the time and an individual known to the United States Attorney but not charged herein, established a company called Quest Innovations, LLC ("Quest") by herself, for her own purposes, and that she had sole control over Quest's bank accounts.
27. In truth and in fact, as Defendant then well knew, (1) he established Quest for the sole purpose of accepting a "finder's fee" from KGTA, a company allegedly involved in the purchase and sale of petroleum products to which HIXSON had improperly referred an

investment client of his in order for his client to invest in KGTA, and (2) HIXSON controlled Quest's bank account.

28. Defendant made the false statements described above with the intent to corruptly obstruct, influence and impede and to attempt to obstruct, influence and impede the prosecution of Defendant in the present case. Defendant's false statements caused the SEC attorneys assigned to the case to perform additional investigation in connection with Defendant's allegations.

All in violation of Title 18, United States Code, Section 1001.

Mr. Hixson would ultimately plead guilty to 18 U.S.C. §§ 152(1), 152(3), Bankruptcy Fraud (concealment by and through Quest), and guilty to two (2) counts of 18 U.S.C. § 1001, False Statements to SEC and FBI officials as it related to the utilization and control of Quest as a vehicle for concealment and unlawful kickbacks from referring clients to invest in the Ponzi Scheme operated by KGTA and the related individuals. The above-referenced criminal information establishes that *US v. Hixson* arose out of the same nucleus of operative facts as the *Abdallah* case. In Meisel's Form TCR, submitted August 25, 2014, Meisel attests Hixson stated to him that he had formed Quest Innovation LLC "for two reasons: (1) to hide his bonus checks from the Domestic Relations court, and (2) as a business account for some side business arrangement that he was involved in." *Exhibit A to Form TCR* at 5. The statements therein are factually similar, if not duplicative, to what Meisel informed SEC Attorney Timothy Leiman of on July 7, 2014. Within SEC Attorney Christopher White's (initial) Declaration on July 15, 2020, White states "The information Meisel provided about the rent payments Hixson made from Quest's

account and the statements Hixson made to Meisel was new". *White Initial Declaration* at ¶ 12.

As a result of the above-referenced criminal matter came an administrative SEC action, *In re JEREMY S. HIXSON,* Securities Exchange Act of 1934 Administrative Proceeding, File No. 3-17880 (March 13, 2017).

These facts taken together into consideration establishes the crux of Meisel's entitlement under 17 C.F.R. § 240.21F-4(1) and 17 C.F.R. § 240.21F-4(2). *See Hong v. United States SEC,* 41 F.4th 83 (2d Cir. 2022).

### D. A Discussion of "Related Cases"

"For purposes of making an award under § 240.21F-10 of this chapter, the Commission will treat as a Commission action two or more administrative or judicial proceedings brought by the Commission if these proceedings **arise out of the same nucleus of operative facts**."

Rule 21F-4(d)(1). (Emphasis added.) *See also,* n. 2, Securities Exchange Act of 1934 Release No. 89721, File No. 2020-28 (September 1, 2020) ("For the purposes of making an award, we consider the administrative actions in this matter as a single Covered Action because they arose out the same nucleus of operative facts. *See* Exchange Act Rule 21F-4(d)(1), 17 C.F.R. §240.21F-4(d)(1).")

*Hong v. United States SEC,* 41 F.4th 83 (2d Cir. 2022).

17

### E. **The Final Order by the Commission is Unsupported by Substantial Evidence**

In the Second Circuit, the Commission's determination can be set aside if it is "unsupported by substantial evidence". *Cerny and Buxbaum v. SEC*, Summary Order at 3, 16-934-ag (2d Cir. Sept. 7, 2017). See also, *Doe v. SEC*, 729 Fed. Appx. 1, 4 (D.C. Cir. 2018) (the D.C. Circuit found "substantial evidence supporting the Commission's decision" to deny a whistleblower award.)

The **sole basis of fact** used to support the Commission's preliminary denial of Meisel's claim, and the final order reflecting the same, are two Declarations, one initial and one supplemental (incorporating by reference the initial), by the Commission's own Christopher White. Appendix Exhibit 1.

### F. **A Discussion of Christopher White's Initial Declaration**

Christopher White's Initial Declaration, dated July 15, 2020, simply titled "Declaration of Christopher White" Appendix Exhibit 18 (hereinafter referred to as "White's Initial Declaration", or the "Initial Declaration") is erroneous in nature and scattered with what are likely accidental misrepresentations[4].

From the get-go, in Mr. White's first declaratory paragraph, Mr. White declares that "the investigation styled *In re Thomas Abdallah* (the 'Abdallah Investigation'), which resulted in the following actions: (1) *SEC v. Abdallah, et al.*,

---

[4] Award Applicants are not offered any opportunity to cross-exam SEC Staff Declarants.

No. 14-cv-1155 (N.D. Ohio); ... and (6) *In re Jeremy S. Hixson*, AP No. 3-17880 (follow-on administrative proceeding)." *White's Initial Decl.*, ¶ 1. In other words, **the Commission's Declarant admits under oath that the Hixson Administrative Proceeding arose from the same investigation and, thus, the same nucleus of operative facts as the *SEC v. Abdallah*, *et al.* case**. In accordance with Rule 21F-4(d)(1), it should therefore be treated as part of the Commission's *Abdallah* action.

> For purposes of making an award under § 240.21F-10 of this chapter, the Commission will treat as a Commission action two or more administrative or judicial proceedings brought by the Commission if these proceedings arise out of the same nucleus of operative facts;

17 C.F.R. § 240.21F-4(d)(1).

White's Initial Declaration confuses the Commission into a number of erroneous underlying notions. At the end of White's Initial Declaration, White specifies matters relevant to the proceedings, but not relevant in determining Meisel's contributions. "By the time Meisel contacted us, we had already seen the checks from KGTA to Quest Innovations, we had already obtained the spreadsheets from Gainer stating that his commissions should be split with 'hix' and 'quest', and we already knew Hixson introduced an investor to Gainer." *White's Initial Decl.* at ¶ 12. This excerpt of just one of White's misleading declarations introduces a confusing notion that Meisel was providing information that was already known from the get-go. This is not the case, as White concedes in the next sentence, "The information Meisel provided about the rent payments Hixson made from Quest's

19

account **and the statements Hixson made to Meisel was new**, but that information

was not used in the *Abdallah* case." White **downplays** the contribution of Meisel by

making his contributions seem irrelevant to the pending actions. This is also

misleading, insomuch as the SEC-motioned Receiver would reflect on the record in

*SEC v. Abdallah, et al.* that Hixson is relevant to that action.[5]

> 13. Meisel's information also did not lead to any monetary recovery. We did not name Hixson as a defendant in the *Abdallah* case. Following his criminal conviction, Hixson consented to collateral and penny stock bars in a separate investigation, *In re Jeremy Hixson*. No disgorgement or civil penalties were included in the *Hixson* settlement. The Receiver in the *Abdallah* case brought a clawback action against Hixson, his wife, and Quest Innovations, which was settled in August 2017 for $61,000. The records for KGTA's bank account provided the information the Receiver needed to bring the clawback action. We had already obtained those bank records before Meisel contacted us.
> Appendix Exhibit 18, ¶ 13.

There exists a plethora of issues with these claims. Most notably, the claim

that Meisel's information did not lead to any monetary recovery. Setting aside the

statement of the SEC-motioned Receiver, accrediting Meisel for significant

recoveries, and only focusing on the information Meisel provided the SEC and FBI

directly connecting Hixson with utilizing Quest as a vehicle for concealment—

Hixson was ultimately led to one charge of bankruptcy fraud and two charges of

false statements being pled to in 2016 with agreed-to restitution, an agreed-to 2017

settlement with the SEC in an Administrative Proceeding, and an agreed-to 2017

---

[5] Appendix Exhibit 19.

settlement with the SEC's Receiver in the matter of Quest. Moreover, civil penalties were included in the SEC Receivership action and in the form of restitution in the DOJ's parallel proceeding. While White again reminds the Commission that they already had bank records—something Meisel's claim never purported to have introduced—White negates to mention the Receiver's clawback action, reliant on KGTA's bank records only, would not have connected Hixson with Quest. Rather, Meisel provided information based upon his own independent analysis to Mr. Leiman as it pertained to the understanding of acronyms, the full scope of Hixson's, Quest Innovation LLC's, and Rollyson's connection to and involvement in the KGTA Ponzi Scheme. Again, White admits the connection and influence Hixson had over Quest was introduced by Meisel. In fact, the Receiver's clawback action initially did not name Hixson.

Furthermore, Hixson's guilty plea and consent settlement with the Commission arose directly from his false statements to SEC Staff and FBI Agents that he: 1) did not control Quest; and, 2) did not discuss KGTA with *SEC v. Abdallah* defendant Gainer. Information to the contrary was provided by Meisel directly to SEC Attorney Leiman, as well as to FBI Agent Shawn McGovern. It was this information that weaponized both the SEC and the FBI to interview Hixson with a different line of questioning and allow for the disproval of those ultimately false statements.

Hixson's plea agreement was entered on May 12, 2016. Conditionally, Hixson agreed to testify against the KGTA defendants. Just two months later, on July 15, 2016, Gainer pleaded guilty. The dominoes fell from there, beginning with Hixson and the contributions of Meisel.

Meisel incorporates his Response to the Preliminary Determination and Request for Rehearing as though fully set forth herein. Appendix Exhibit 8.

### G. <u>A Discussion of Christopher White's Supplemental Declaration</u>

Christopher White's Supplemental Declaration, dated October 3, 2022, simply titled "Supplemental Declaration of Christopher White" (hereinafter referred to as "White's Supplemental Declaration", or the "Supplemental Declaration") is erroneous in nature and scattered with what are likely accidental misrepresentations, incorporating erroneous statements from the Initial Declaration therein that, in most instances, directly contradict other documents. Specifically, Mr. White alleges the following points of contention:

White contends that he would regularly contact and exchange information with SEC Attorney Timothy Leiman. "[I] learned of the information [Meisel] provided Mr. Leiman in the July 7, 2014, telephone call shortly thereafter." Appendix Exhibit 4 at ¶ 4. However, just two years prior, White declared, "On August 18, 2014, I learned through my investigative efforts that Hixson had admitted to an investor that Quest was an entity owned by him and his wife, and that Quest

had been paid fees from KGTA for the investor's investments." Appendix Exhibit 18 at ¶ 9. White **corroborated** Meisel's **original information** provided to Mr. Leiman, White's colleague White alleges to frequently exchange information with as they share the same office.

White goes on to revisit attempts to try to artificially carve Meisel's award application out of Rule 21F-4(c)(2) by characterizing the Hixson case as a "separate investigation" completely devoid of the same nucleus of operative facts that the DOJ and even the SEC's motioned-for Receiver recognized throughout judicial actions. Appendix Exhibit 4, ¶ 5. White completely negates any and all claims made by Meisel in the Response to the Preliminary Determination and Request for Rehearing as it pertained to the essential role Meisel played to achieve greater success through *SEC v. Abdallah, et al.*'s Receiver.

Moreover, the Final Order cites this Supplemental Declaration of first appearance as a crediting factor in their erroneous decision Meisel did not advance the investigation. Further, both the initial and the supplemental declaration were provided based off recollection sworn and attested to 6 and 8 years, respectively, after the initial investigation began, from a single-member of an investigative team comprised of over half-a-dozen individuals, of whom Meisel had no contact with until March of 2020 around the time of White's initial declaration. This inclusion of White's Supplemental Declaration was an abuse of discretion.

**H. <u>A Discussion of 'Related Action'</u>**

> The term 'related action', when used with respect to any judicial or administrative action brought by the Commission under the securities laws, means any judicial or administrative action brought by [certain entities, including agencies] that is based upon the original information provided by a whistleblower . . . that led to the successful enforcement of the Commission action.

*Hong v. United States SEC*, 41 F.4th 83, 99 (2d Cir. 2022) citing 15 U.S.C. § 78u-6(a)(5).

Most recently, in *Hong v. United States SEC*, 41 F.4th 83 (2d Cir. 2022), the Second Circuit Court of Appeals performed an in-depth analysis interpreting the applicability of related actions, entitlement to an award through a covered action, and the meaning of a "covered judicial or administrative action" under §21F(a)(1).

It is undisputed that the covered action in Meisel's claim is in connection with *SEC v. Abdallah, et al.*, 14-cv-01155 (N.D. Ohio) – brought by the SEC. This judicial action, followed with the SEC's administrative, the Receiver's clawback actions, and the DOJ's criminal prosecutions all derived from the covered action brought by the SEC.

> The [Whistleblower] Program provides that the SEC "shall pay" monetary awards to individuals who provide the SEC with "original information" pertaining to securities laws violations and resulting in sanctions payments if certain conditions are met. 15 U.S.C. § 78u-6(b)(1). Thus, the statute directs in relevant part:
> > In any covered judicial or administrative action, or related action, the Commission, under regulations prescribed by the Commission . . . , shall pay an award or awards to 1 or

more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action, or related action, in an aggregate amount equal to . . . not less than 10 percent . . . [and] not more than 30 percent, in total, of what has been collected of the monetary sanction imposed in the action or related actions.

*Id.* (emphasis added). A whistleblower's eligibility for an award under the program accordingly depends in part on whether the information provided led to the successful enforcement of a "covered judicial or administrative action" or "related action."

Section 21F(a)(1) defines "covered judicial or administrative action" as "any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000." *Id.* § 78u-6(a)(1). It defines a "related action," as, "when used with respect to any judicial or administrative action brought by the Commission under the securities laws, . . . any judicial or administrative action brought by [certain other entities]" that "is based upon the original information provided by a whistleblower . . . that led to the successful enforcement of the Commission action." *Id.* § 78u-6(a)(5). The Department of Justice is among the entities whose judicial or administrative actions may qualify as "related" for purposes of the Program. *Id.* § 78u-6(a)(5), (h)(2)(D)(i)(I). The Program also confers substantial discretion on the Commission in administering the Program, instructing that "[a]ny determination made under [Section 21F], including whether, to whom, or in what amount to make awards, shall be in the discretion of the Commission." *Id.* § 78u-6(f).

*Hong* at 88–89 (footnotes omitted.)

While Hong did provide the Commission with a TCR form, contributing in some way to the settlements the DOJ and FHFA reached with RBS, ultimately Hong was not entitled to an award because "the Commission did not sue the Bank, formally initiate an enforcement proceeding against it, or enter into a settlement with it." In this instance, and every related action herein, Meisel differs from *Hong*.

25

"…[T]he requirement that a covered action be "brought by" the SEC calls for some form of leadership by the SEC in the action itself." *Hong* at 99. We saw that leadership by the SEC in all related actions[6], including those brought by the Receiver introduced in *Abdallah*, in-addition-to those prosecuted by the Department of Justice following, or as a parallel proceeding to, *Abdallah*.

The conditions of Receiver James Ehrman's implemented in *Abdallah*, Receiver Ehrman is **required** to consult with SEC counsel prior to and during actions in any jurisdiction taken as "advisable or proper to recover and/or conserve Receivership Property." Appendix Exhibit 13, ¶42. Those conditions **must** be met prior to Receiver Ehrman initiating and pursuing claims against both co-defendants in *Abdallah* and in *Hixson*. It is undisputed by Receiver Ehrman, in both his communications to the Court and to Meisel, that every action referenced herein is related "aris[ing] out of the same nucleus of operative facts." *17 C.F.R. §240.21F-4(d)(1)-(2). See also,* Appendix Exhibit 14.

Further, in *United States v. Hixson*, No. 16-cr-00128 (N.D. Ohio). Resulting in guilty pleas, restitution, and an agreement to testify against KGTA's *SEC v. Abdallah, et al.* defendants, a notice of related case was filed by AUSA Mark Bennett. Appendix Exhibit 21 [Doc. 6] Specifically, AUSA Bennett contends that

---

[6] *See* Appendix Exhibit 20.

*US v. Hixson* is related to Case No.: 1:15cr231, *United States v. Thomas Abdallah, Mark M. George, and Jeffrey L. Gainer*—the three main co-defendants in *SEC v. Abdallah, et al.*

Following this DOJ action, Hixson was barred from associating with "any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; and … barred from participating in any offering of a penny stock…" *See* Appendix Exhibit 22, Securities Exchange Act of 1934 Release No. 80231, File No. 3-17880 (March 13, 2017). *See also* Appendix Exhibit 1, Securities Exchange Act of 1934 Release No. 96227, Whistleblower Award Proceeding File No. 2022-09, Order Determining Whistleblower Award Claim (November 4, 2022)

It is unquestionable Meisel was instrumental in the successful action against Jeremy Hixson, an intricate member of the KGTA Ponzi Scheme "aris[ing] out of the same nucleus of operative facts." *17 C.F.R. §240.21F-4(d)(1)-(2).*

## I. __MEISEL IS ENTITLED TO A DFA WHISTLEBLOWER AWARD BECAUSE HE PROVIDED SPECIFIC, CREDIBLE, AND TIMELY INFORMATION TO CAUSE THE COMMISSION TO EXPAND THE INVESTIGATION WHICH LED OR SIGNIFICANTLY CONTRIBUTED TO A SUCCESSFUL ACTION – 17 C.F.R. § 240.21F-4(c)(1)-(2).__

As relevant here, the Commission's whistleblower rules define when information will be considered to have led to the successful enforcement of a covered action, a statutory requirement for award eligibility. *See* 15 U.S.C. § 78u-6(b)(1). Rule 21F-4(c) provides that the Commission will consider that a claimant "provided original information that led to successful enforcement of a judicial or administrative action in any of the following circumstances":

> (1) the claimant gave the Commission information that was "sufficiently specific, credible, and timely to cause the staff" to open, reopen, or expand an investigation, and the Commission brought a successful action "based in whole or in part on conduct that was the subject of" that information;

> (2) the claimant gave the Commission information "about conduct that was already under examination or investigation by the Commission," and that "submission significantly contributed to the success of the action"; or,

> (3) the claimant reported information through a company's internal reporting procedures before or at the same time the claimant reported the same information, the company later provided that information or the results of the company's consequent internal investigation to the Commission, and the information given to the Commission otherwise satisfies either (1) or (2) above.

17 C.F.R. § 240.21F-4(c)(1)-(3).

Setting aside the voluminous reasons this Court should disregard Declarant White's Supplemental Declaration and considering the numerous reasons provided in Petitioner's Response to Preliminary Determination and Declarant White's initial Declaration therein, Declarant White concedes, albeit inadvertently, that the

information Meisel provided to SEC Attorney Timothy Leiman, Esq. in July of 2014 was corroborated by Hixson's guilty plea of making false statements as it pertained to Hixson's control over Quest Innovations, LLC—information provided by Meisel to Leiman and used in the August 7, 2014 SEC interview of Jeremy Hixson.

Meisel gave the Commission original information that was sufficiently specific, credible, and timely to cause the staff to inquire concerning different conduct as part of a current examination or investigation, and the Commission brought a successful judicial or administrative action based in whole or in part on conduct that was the subject of Meisel's original information. 17 C.F.R. § 240.21F-4(c)(1). Further, Meisel gave the Commission original information about conduct that was already under examination or investigation by the Commission, the Congress, any other authority of the Federal Government, a state attorney general or securities regulatory authority, any self-regulatory organization, or the PCAOB, and Meisel's submission significantly contributed to the success of the action 17 C.F.R. § 240.21F-4(c)(2).

## CONCLUSION

For the foregoing reasons, this Court should set aside the SEC's Final Order pursuant to the APA, and instruct the SEC to issue a whistleblower award to Meisel in accordance with the factors in 15 U.S.C. § 78u-6(c). Meisel is entitled to a DFA

whistleblower award because he voluntarily provided original information which led or significantly contributed to numerous successful actions.

Respectfully submitted,

/s/ *Luke Lirot*

LUKE LIROT, ESQ.
Luke Charles Lirot, P.A.
2240 Belleair Rd., Suite 190
Clearwater, FL 33764
Phone: (727) 536-2100
Facsimile: (727) 536-2110
Primary E-mail:
Luke2@lirotlaw.com
*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that this Brief complies with the type-volume limitation set forth in Rule 32(a)(7)(b) of the Federal Rules of Appellate Procedure. This Brief was compiled using 14-point Times New Roman font and contained 7,692 words, as reported by Microsoft Word.

/s/ Luke Lirot
Luke Lirot, Esq.
Florida Bar Number 71486

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that this Initial Brief was electronically filed through the Court's CM/ECF system, and served to counsels of record identified on the Service List maintained by the Clerk in the manner specified, via transmission of Notices of Electronic Filing generated by the CM/ECF system, and/or under separate electronic transmission to the Service address of record on this ___ day of April, 2023.

/s/ Luke Lirot
Luke Lirot, Esq.
Florida Bar Number 71486